JAMES R. GIVENS, ADMINISTRATOR OF THE ESTATE OF
MARY ELLEN GIVENS, DECEASED *v.* PAULINE ROSE
AND AMEL BAILEY

[No. 1-877A195. Filed December 26, 1978.]

*Russell E. Mahoney,* of Petersburg, for appellant.

*David Glickfield, Richard R. Cook, Milford, Milford, Glickfield & Cook,* of Marion, for appellee.

LYBROOK, P.J. — James R. Givens, personal representative of the estate of Mary Ellen Givens, brought this action in the Pike Circuit Court wherein he sought to recover certain certificates of deposit and a checking account held in joint names by the decedent and her two sisters, Betty Bailey and Pauline Rose, at the Citizens State Bank of Petersburg.

James Givens filed Petitions for Disclosure against respondents Pauline Rose and against the husband of the deceased's sister, Betty Bailey.

Each petition alleged that the bank accounts belonged to the estate of the decedent and that all or most of the funds were conserved social security funds which, pursuant to federal regulations, were to have been conserved on behalf of the recipient during her lifetime, and if deposited in a bank, held in an account in which the recipient alone had the only interest. James Givens alleged in the petition against Pauline Rose that Mrs. Rose had knowledge of or had converted, disposed of, or otherwise wrongfully exerted control over property belonging to the estate of the decedent, namely through the cashing of the certificates of deposits and withdrawal of funds in the checking account. The petition against Amel Bailey alleged that he had knowledge of, or had converted, disposed of, or otherwise wrongfully exerted control over the three certificates of deposit held by his wife and Mary Givens.

Respondent Amel Bailey filed an answer to the Petition for Disclosure, admitting that his deceased wife, Betty, had on January 17, 1973, turned over a checking account at the Citizens State Bank of Petersburg to Mary Ellen Givens and Pauline Rose, and that his deceased wife had cashed each of the certificates of deposit she held jointly with Mary Ellen Givens and deposited the proceeds in the checking account at the Citizens Bank in the names of Mary Ellen Givens or Pauline Rose. Amel Bailey further answered that at the time of his wife's death, she did not have any funds belonging to the decedent, and that he had never had any funds or property belonging to Mary Givens.

Following a hearing on the petitions, the trial court denied each petition and ruled that the certificates of deposit and checking account belonged to Pauline Rose. The Special Findings of Fact and Judgment, Order and Decree, omitting formal parts, are set out below:

"JAMES R. GIVENS, Administrator of the Estate of MARY ELLEN GIVENS, Deceased, by counsel RUSSELL E. MAHONEY, having filed Petitions alleging that PAULINE ROSE and AMEL BAILEY had either converted or disposed of, or have knowledge of certain property belonging to the Estate of the Decedent, MARY GIVENS, appeared before this court with his witnesses, JAMES R. GIVENS, DOLA GIVENS, PAULINE ROSE, and AMEL

BAILEY, and AMEL BAILEY appearing by counsel CARL M. GRAY, and PAULINE ROSE appearing by counsel DAVID GLICKFIELD and testimony being heard, and evidence received and duly recorded, the court now finds as fact:

1. That MARY ELLEN GIVENS died on February 8, 1973, that at the time of her death she had received Ten Thousand Two hundred Forty-one dollars and 80 cents ($10,241.80) in her lifetime from the Social Security Administration for her support and maintenance from January of 1957 through September of 1972;

2. That her father, JOSEPH H. GIVENS, and MYRTLE GIVENS, and BETTY GIVENS BAILEY, all as representative payee for MARY E. GIVENS and PAULINE ROSE, used all of said Social Security money for the health, welfare and maintenance and well-being of the said MARY ELLEN GIVENS, deceased;

3. That any money represented by Certificates of Deposits, and deposits in joint checking account in the name of MARY ELLEN GIVENS, and PAULINE ROSE, amounting to approximately Eighty-seven hundred dollars, ($8,700.00) did not constitute conserved Social Security funds and that said monies belongs [sic] to PAULINE ROSE.

NOW THEREFORE, the court having examined said petitions,

(H.I.)

and being duly advised in the premises, having heard all of the testimony and examined all of the evidence in this matter:

IT IS THEREFORE NOW ORDERED, ADJUDGED, AND DECREED that neither PAULINE ROSE nor AMEL BAILEY have [sic] converted or disposed of or have knowledge of any property belonging to the estate of the decedent, MARY ELLEN GIVENS, that the sums of money represented by certain Certificates of Deposit and joint checking account in the names of the decedent and PAULINE ROSE testified to herein in the amount of approximately Eighty-seven hundred dollars are not conserved Social Security funds belonging to the Estate of MARY ELLEN GIVENS, deceased, but are funds belonging to the said PAULINE ROSE."

James Givens, as personal representative of Mary Givens' estate, petitioned for leave of the trial court to file a Motion to Correct Errors, which petition was granted, and the Motion to Correct Errors was subsequently filed and denied. This appeal follows.

The issues presented for our review are:

(1) Whether the decision of the trial court is contrary to law in holding that the certificate of deposit issued to Mary Ellen Givens and Betty Bailey, bearing an endorsement assigning it to Mary Givens, is not property belonging to her estate?

(2) Whether the decision of the trial court is contrary to the evidence in that the trial court did not find that the certificates of deposit and checking account were held in constructive trust for the benefit of Mary Ellen Givens, and at her death, became the property of her estate?

(3) Whether the trial court erred in excluding the testimony of a witness concerning a conversation between the witness and the deceased father of the decedent, about the disposition of social security payments he received on behalf of Mary Ellen Givens?

Mary Ellen Givens died intestate, February 8, 1973, at the age of 46. She was an incompetent, never having been able to feed, clothe or otherwise care for herself, nor could she walk or talk. From the time of her birth until the fall of 1971, she lived with her parents on their farm in Gibson County. After her father's death, she was moved with her mother to a mobile home located next to the home of her sister, Betty Bailey, in Spurgeon, where she was cared for by her mother and sister until January, 1973, when she and her mother were placed in a nursing home in Princeton. Mary Ellen Givens died some twenty days later.

During her lifetime, Mary Givens' only income was social security benefits which commenced in January, 1957, and ended with her death. The total amount of these benefits came to $10,241.80, which was received in monthly checks payable to her representative payees which included her father, her mother and her sister, Betty Bailey. Decedent's father used some of the benefits to pay for Mary's care and deposited some of the social security benefits he received in joint certificates of deposit in her name and that of himself, her mother and her sister, Betty. All of the certificates of deposit held by Mary with others at her father's death, totaling $8,473.94, were later cashed and the money used to purchase other certificates of deposit in the names of Mary Ellen Givens and Betty Bailey, jointly with right of survivorship.

In January, 1973, Betty Bailey, who was in ill health, began transfer-

ring accounts she had with Mary to Mary and their sister, Pauline Rose. At the time of Mary's death, there was a checking account in the names of Mary and Pauline Rose at the Citizens Bank, and certificates of deposit in the names of Mary and Betty Bailey at the First National Bank and the Citizens Bank, both of Petersburg.

Following Mary's death, the Social Security Administration advised her last representative payee, Betty Bailey, that any unused benefits paid to Mary or her representative payee belonged to the estate of the beneficiary, Mary Ellen Givens, and were to be disposed of in accordance with state law. Thereafter each of the certificates of deposit was deposited in the joint checking account of Mary and Pauline Rose at Citizens Bank. Pauline Rose wrote checks on the account to cover the expenses of Mary's funeral and other expenses incurred in her behalf.

After the expenses of the decedent were paid, $8,866.69 remained on deposit in the checking account until 1976, when Pauline Rose cashed two checks, one for $500 and a later one for $8,000. The $8,000 check was cashed and deposited in a joint savings account held by Pauline Rose and her husband in a bank near her home. No Application for Transfer was ever signed, nor did Pauline Rose or anyone else pay Indiana Inheritance Tax on the money transferred by Pauline Rose. The appellant brings suit to recover these funds.

At the outset, we note that James Givens is appealing from a negative judgment, and it must be remembered that a negative judgment may be attacked only as being contrary to law. *Link v. Sun Oil Co.* (1974), 160 Ind.App. 310, 312 N.E.2d 126; *Blankenship v. Huesman* (1977), 173 Ind.App. 98, 362 N.E.2d 850. When a judgment is being attacked as being contrary to law, this court on appeal may neither weigh the evidence nor consider the credibility of the witnesses. *State v. Boyle* (1976), 168 Ind.App. 643, 344 N.E.2d 302. We may consider only the evidence most favorable to the judgment and all reasonable inferences to be drawn therefrom. *Longabaugh v. Jackson* (1975), 163 Ind.App. 108, 321 N.E.2d 865. It is only where the evidence and inferences so considered lead to but one conclusion and the trial court has reached a contrary conclusion that the judgment will be disturbed as contrary to law. *State v. Boyle, supra; Blankenship v. Huesman, supra.*

We begin our consideration with the question of whether the decision of the trial court in finding that the certificates of deposit and checking account were not held in constructive trust for the benefit of Mary Ellen Givens was in error, since the resolution of this issue will be dispositive of the others raised in this appeal.

The evidence here consists largely of oral testimony, and we are mindful of the rule set out in the case of *Costa v. Costa* (1953), 124 Ind.App. 128, 115 N.E.2d 516, wherein the court wrote:

"Courts generally hold that to sustain a trust relation by oral evidence that the proof thereof must be clear and distinct; that it must be shown whether the trust is expressed, resulting or constructive and that the standard of evidence for such purpose is a superior measure of proof. The evidence must be higher in quality to substantiate the same — that is, in clearness, fullness and persuasiveness. . .

In order to successfully prove the existence of a trust by parole evidence alone, it must appear that such evidence adduced at the trial is not compatible with any other result."

A constructive trust is a fiction of equity devised for the purpose of making equitable remedies available against one who through fraud or other wrongful means acquires the property of another. Trusts are constructed by the court irrespective of the intent of the parties, in defiance of the statute of frauds, to uphold justice and avoid unjust enrichment. Indiana courts have limited the imposition of a constructive trust to instances where there is actual fraud or there exists a breach of duty arising out of a confidential or fiduciary relationship which necessitates the presumption that fraud be inferred. If the confidential relationship is found to exist, then fraud can be presumed or inferred due to a violation or breach of the fiduciary relationship. One occupying a confidential or fiduciary relationship of trust with another is bound to abstain from placing himself in an inconsistent position tending to interfere with the execution of his duties. *Hunter v. Hunter* (1972), 152 Ind.App. 365, 283 N.E.2d 775.

In *Hunter,* Judge Buchanan discussed the existence of a confidential relationship:

"While the mere existence of a family relationship is insufficient to raise a presumption of a confidential relationship, there are cer-

tain relationships between grantor and grantee in which the law may presume improper influence, such as, parent-child, husband-wife, or attorney-client. . . . Our Supreme Court, in *Westphal v. Heckman, supra* [(1916) 185 Ind. 88, 113 N.E. 299] had the following to say about the special relationships in which a confidential relationship would be presumed:

'There are certain legal and domestic relations in respect to which the law raises a presumption of trust and confidence on one side and a corresponding influence on the other. The relations of attorney and client, principal and agent, husband and wife, and parent and child, belong to this class, and there may be others. Where such a relation exists between two persons and the one occupying the superior position has dealt with the other in such a way as to sustain a substantial advantage, *the law will presume that improper influence was exerted and that the transaction is fraudulent.* * * *

This so-called presumption, when indulged, arises out of relations which exist between the contracting parties regardless of any facts or circumstances having a tendency to show that a confidence was reposed by one of the parties and an influence gained by the other. Proof of the existence of such a relation between the parties establishes *prima facie* that *the dominant party* to such relation occupies a position of trust and confidence which he must not abuse.' " (Emphasis added by the court in *Hunter.*)

Indiana's courts have been reluctant to grant a remedy such as constructive trust thereby effecting restitution unless the evidence is clear and so convincing as to leave the mind satisfied that such a trust exists. *Hunter v. Hunter, supra.*

It is uncontradicted that Mary Givens was never able to care for herself or handle any of her financial affiars. Until his death in 1971, Mary's father managed the social security benefits which Mary began receiving in 1957. Later, Mary's mother and still later, her sister, Betty, were made representative payees for Mary on these monthly checks. Some of the money was used to pay Mary's expenses, and the remainder was used to purchase certificates of deposit in the names of Mary and her sister, Betty Bailey. When Betty Bailey became ill, she began transferring funds to an account in the names of Mary and their sister, Pauline Rose. At the same time, Betty Bailey began transferring funds from an account she held jointly with her mother, who was also institutionalized in a nursing home, to an account held jointly by her mother

and Pauline Rose. Money from the mother's account was not used for the expenses of Mary Givens, nor was the money from Mary's account used for her mother's care.

Following Mary's death, checks were drawn on the account by Pauline Rose to pay for funeral expenses, burial clothes, hospital and ambulance bills, and nursing home care for Mary Givens. Betty Bailey cashed three of the certificates of deposit and deposited the funds in the checking account. The remaining certificate of deposit which was in the names of Mary Givens and/or Betty Bailey, remained uncashed at Betty Bailey's death, but was endorsed by Mrs. Bailey's heirs and deposited in the checking account, in a similar fashion as the prior three certificates.

Evidence is undisputed that the money for the certificates of deposit originally purchased in the names of Mary and her father came from her own social security benefits and from her father. These certificates of deposit were cashed and the proceeds were used to purchase the certificates of deposit issued in the names of Mary Givens and Betty Bailey, which are the subject of this action.

It is uncontradicted that the various accounts and certificates of deposit which were held jointly by various members of Mary Givens' family and Mary Givens herself were intended to be used for her care and benefit throughout her life. It is clear that during the period from 1957 to 1971, while Mary's father lived, the money was held by him for the benefit of Mary. A similar arrangement was in effect after her father's death, with Betty holding the funds for the benefit of Mary. We hold that these facts conclusively show that a constructive trust came into existence when Mary's father purchased the first certificates of deposit for her benefit. The trust continued unaltered when Betty assumed these same obligations.

Mary's money was never commingled with her mother's, nor was it spent by any of her personal representatives for other than Mary's care. Clearly a confidential fiduciary relationship arose with the receipt of social security benefits in the name of Mary Givens, who was incompetent, and her representative payees, beginning with her father and continuing after his death with her mother and sisters, who continued that relationship through the receipt of funds

in her behalf, the purchase of certificates of deposit, and the paying of her expenses throughout her natural life.

As this court said in *Hall v. Indiana Department of State Revenue* (1976), 170 Ind.App. 77, 351 N.E.2d 35:

"As a general rule the party seeking to establish a constructive trust has the burden of proof. *McQuaide, Admx. v. McQuaide* (1930), 92 Ind.App. 370, 168 N.E. 500.

'If, however, the existence of an antecedent, confidential, or fiduciary relationship is shown, and the one occupying the superior position deals with the other in such a way as to sustain an advantage, *the law will presume that improper influence was exerted and that the transaction is fraudulent,* and where a prima facie case of constructive fraud is so made out from the fiduciary relationship of the parties and other circumstances connected with the transaction the burden of affirmatively proving good faith, or the absence of undue influence, or proving the justice, equity, and fairness of the transaction assailed, is on the party denying the existence of a trust.' (Emphasis added.) 28 I.L.E. Trusts § 78; See also, *Potter v. Daily* (1942), 220 Ind. 43, 40 N.E.2d 339; *Huffman v. Huffman* (1905), 35 Ind.App. 643, 73 N.E. 1096."

Pauline Rose clearly had the burden of proving "good faith" and she failed to justify the removal of over $8,000 from the checking account, saying only that she believed her father and sister, Betty Bailey, would have wanted her to have the money.

We are mindful of the fact that certificates of deposit and the checking account were all held jointly with right of survivorship. In the case of *In Re the Estate of Fanning* (1975), 263 Ind. 414, 333 N.E.2d 80, the Indiana Supreme Court stated:

"Without an expression to the contrary, the third-party donee-beneficiary contract creates a rebuttable presumption that the usual rights incident to jointly owned property with the right of survivorship was intended. . . . The burden of proof is upon the party who wishes to show a contrary intent from that expressed in the third party beneficiary contract."

We believe the appellant has sustained this burden. Mary Givens could never have assented to, nor even signed the written instrument required

to create a joint bank account with right of survivorship upon which Pauline Rose claims her right to the funds in question. The proceeds from the certificates of deposit which were deposited in the checking account were intended to be used for Mary Givens' benefit during her life and should have passed to her estate at her death.

As to the certificate of deposit, which was endorsed and cashed following the death of Betty Bailey, we find that the endorsement by the heirs of Betty Bailey to Mary Givens was consistent with the theory of a constructive trust and was property belonging to Mary Givens' estate. The certificate bears the following endorsement:

> "The undersigned jointly and severally, say that Mary Ellen Givens died in February, 1973, survived by Betty Bailey; that Betty Bailey died November 3, 1973, survived by the undersigned Amel Bailey, her husband and widower, and LeRoy Bailey and DeWayne Bailey, her adult sons, as her sole and only heirs at law; and, we assign and transfer any and all our right, title and interest to Mary Givens.
>
> /s/ Amel Bailey
> /s/ LeRoy Bailey
> /s/ DeWayne Bailey"

Amel Bailey testified that his wife, Betty, cashed checks from the Social Security Administration on behalf of Mary Givens, and those funds which were not used for Mary's care were deposited in the checking account at the bank. He also testified that he made the actual deposit of several of the certificates of deposit into the checking account at the request of his wife when she was too ill to conduct the transaction herself.

Mr. Bailey stated that he and his sons endorsed the last certificate after which he cashed it and deposited the proceeds in the checking account held in the names of Mary Ellen Givens or Pauline Rose. The date of that deposit was December 11, 1973, at which time both Mary Ellen Givens and Betty Bailey were deceased.

From the actions of the heirs of Betty Bailey, it is apparent that they claimed no right to the certificate of deposit, and intended it to go to Mary Ellen Givens, as stated in the language they chose, cited above.

Finally, appellant asserts that the trial court erred in excluding the testimony of one witness, Dola Givens, the wife of the appellant, con-

cerning a conversation she had with Mary Givens' father prior to his death, during which the disposition of the social security benefits he received as Mary Givens' representative payee was discussed. The appellant offered to prove that if she had been allowed to testify the witness would have testified that Mary's father stated he had not used the social security funds he had received in Mary's name for her care, but he had deposited the funds in certificates of deposit in Mary's name jointly with other family members, so the funds could be used for Mary's support after her parents were deceased.

In Indiana, parole evidence has always been admissible in an action to establish or enforce a constructive trust. *Melloh v. Gladis* (1974), 261 Ind. 647, 309 N.E.2d 433; *Cox v. Arnsmann* (1881), 76 Ind. 210.

In *Egbert v. Egbert* (1956), 235 Ind. 405, 132 N.E.2d 910, testimony concerning statements made by a deceased person concerning the note and mortgage which were the subject of that suit was admissible under an exception to the hearsay rule where the statements being related were admissions against the deceased's pecuniary interest and thus were highly credible. See 5 WIGMORE ON EVIDENCE (3rd Edition) §§ 1455 to 1469.

In the case at bar, Pauline Rose testified that she was aware that her father saved a portion of Mary's social security benefits and that federal regulations governing social security payments to a person, on behalf of a beneficiary, called for any benefits not needed for the current maintenance of the beneficiary to be conserved or invested on the beneficiary's behalf and held in trust for the beneficiary, pursuant to the following regulations:

"§ 404.1601 PAYMENTS ON BEHALF OF AN INDIVIDUAL.

When it appears to the Administration that the interest of a beneficiary entitled to a payment under title II of the Act would be served thereby, certification of payment may be made by the Administration, regardless of the legal competency or incompetency of the beneficiary entitled thereto, either for direct payment to such beneficiary, or for his use and benefit to a relative or some other person as the 'representative payee' of the beneficiary. When it appears that an individual who is receiving benefit payments may be incapable of managing such payments in his own interest,

the Administration shall, if such individual is age 18 or over and has not been adjudged legally incompetent continue payments to such individual pending a determination as to his capacity to manage benefit payments and the selection of a representative payee." 20 CFR § 404.1601.

"§ 404.1605 CONSERVATION AND INVESTMENT OF PAYMENTS.

Payments certified to a relative or other person on behalf of a beneficiary *which are not needed for the current maintenance of the beneficiary . . . shall be conserved or invested on the beneficiary's behalf.* Preferred investments are U.S. Savings Bonds, but such funds may also be invested in accordance with the rules applicable to investment of trust estates by trustees. For example, surplus funds may be deposited in an interest- or dividend- bearing account in a bank or trust company, in a savings and loan association, or in a credit union, if the account is either federally insured or is otherwise insured in accordance with State Law requirements. *Surplus funds deposited in an interest-or dividend-bearing account in a bank or trust company, in a savings and loan association, or in a credit union, must be in a form of account which clearly shows that the representative payee has only a fiduciary, and not a personal, interest in the funds . . .* Any other approved investment of the beneficiary's funds made by the representative payee must clearly show that the payee holds the property in trust for the beneficiary." (Emphasis added.) 20 CFR § 404.1605.

Under the requirements of the regulations set out above, Mary's father was required to preserve unspent social security benefits for Mary's future use by placing them in accounts clearly showing that the representative payee has only a fiduciary and not a personal interest in the funds. His admission to the witness that he in fact did not spend Mary's benefits on her care, but instead invested the funds in certificates of deposit for future use, was highly credible in that the money would have appeared to be his by right of survivorship if Mary had preceded him in death. Thus it was clearly against his pecuniary interest to state that the certificates were purchased through the use of Mary's funds. The testimony concerning his statements should therefore have been admitted.

The judgment of the trial court is hereby reversed. The case is remanded to the trial court with instructions to enter judgment for the

estate of Mary Ellen Givens imposing a constructive trust upon the proceeds of the certificates of deposit and the checking account which were held in her name, jointly with others, at the time of her death.

Reversed and remanded.

Lowdermilk and Robertson, JJ., concur.

NOTE—Reported at 383 N.E.2d 448.