**In the Matter of Bob GOOD.**

No. 73S00–9205–DI–403.

Supreme Court of Indiana.

March 18, 1994.

Kris Meltzer, Bate Harrold & Meltzer, Shelbyville, for respondent.

Donald R. Lundberg, Executive Secretary, Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

## DISCIPLINARY ACTION

PER CURIAM.

The Respondent, Bob Good, was charged by a "Verified Complaint for Disciplinary Action" with several violations of the *Rules of Professional Conduct for Attorneys at Law.* The charges arose out of Respondent's representation of Eva M. Berg and his eventual conviction on eleven counts of Theft, all Class D Felonies.

The matter was heard by a hearing officer appointed by this Court pursuant to Ind.Admission and Discipline Rule 23. The hearing officer tendered his findings and conclusions, the Respondent petitioned for review, and the parties proceeded with their briefing schedule. In the meantime, the Respondent was convicted and tendered his resignation pursuant to Admis.Disc.R. 23(17). The Commission filed a Notice of Conviction and a Request to Reopen the Record in order to introduce evidence of the conviction. Thereafter, Respondent made public statements denying any wrongdoing and thereby contradicted his tendered resignation. This Court entered an order for Respondent to show cause why his public disclaimer should not be considered as withdrawal of his tendered resignation. After he failed to respond, this Court granted the Commission's requests

and suspended the Respondent pursuant to Admis.Disc.R. 23(11)(a). This case is now before us for final disposition.

■ The hearing officer's findings to a great extent are based upon extensive stipulations agreed to by the parties. In his petition for review, Respondent challenges some of the factual inferences and the hearing officer's final conclusion that Respondent engaged in the alleged misconduct. These challenges will be addressed within the context of the *de novo* review process employed in cases involving attorney discipline.

Upon review of all matters tendered in this case, we find that Bob Good was admitted to the practice of law in Indiana in 1947 and has practiced in the Shelbyville, Indiana, area since that time. In September of 1988, the Adult Protective Services Investigator for Shelby County initiated an investigation upon allegations that Eva Berg (hereinafter Berg), an 83 year-old single woman, was being exploited by one, Carl Tucker (hereafter Tucker). Berg had given to Tucker more than $40,000 for work allegedly done by him on her family farm. This expenditure almost totally depleted Berg's savings account in just over thirty days.

Respondent had represented the Tucker family for many years and now undertook to represent Carl Tucker in this investigation. In his capacity as attorney for Tucker, Respondent met and discussed with the prosecutor's office the allegations of exploitation lodged against Tucker.

On August 22, 1989, Berg was found on the floor of her home in a condition which indicated that she was incapable of caring for herself. On August 25, 1989, the Adult Protective Services filed with the Shelby Circuit Court a request for a protective order. The Court set hearing on the request and appointed Jeffery M. Linder to represent Berg. On September 6, 1989, Respondent entered his appearance on behalf of Berg and moved for a change of venue from the county. On September 8, 1989, the judge of the Shelby Circuit Court specifically advised Respondent that he was representing two totally conflicting interests in the proceeding, the victim and the alleged perpetrator. However, Respondent remained in the case for the

time being, attorney Linder withdrew because he had previously represented Tucker, and the case was venued to Hancock County.

Berg was hospitalized in a psychiatric ward from August 22 to September 29 of that year. She suffered from tangential thinking and impaired judgment. On September 13, 1989, while Berg was still hospitalized, Respondent prepared and Berg executed a general power of attorney in favor of Respondent. The document was a preprinted form whose blanks were never filled out with any particulars. The hearing officer concluded, and we fully agree, that Berg's condition was such that she could not have understood the nature of the document she had been asked to sign.

On September 17, while Berg was still hospitalized in a psychiatric ward, Respondent prepared and had her execute a will through which Berg left her entire estate, except $1,000, to Tucker, Respondent's client.

After the Protective Services matter was venued to Hancock County, Respondent retained attorney Thomas Cone to represent Berg in that county. Respondent then withdrew his appearance from the case, but at no time did he give up control of the case. Respondent failed to disclose to Cone Respondent's association with Tucker and that family or the transactions that had already taken place. Attorney Cone was merely doing paperwork for Good and did not meet with Berg until January of 1991.

In December of 1990, Respondent sold Berg's farm in a private sale using the services of a friend through Lux Realty. The hearing officer concluded, and we agree, that this was not an arms length transaction. The purchase price was $259,632. Lux Realty received $23,721.24 of that amount, and Respondent received $2,000 as attorney fees. Berg received a home in Shelbyville valued at $65,000.

Through his power of attorney, Respondent exercised complete control of the profits from this sale, namely $170,810.76. In March of 1991, Respondent also sold grain owned by Berg for $13,091.91 which amount

he deposited into accounts controlled and used by him.

All of the proceeds from both sales were dissipated by Respondent and Tucker for their own uses. The parties stipulated that on December 4, 1990, Respondent endorsed the check from the sale and arranged for the proceeds to be distributed as follows: $45,000 in checks made out to Berg or Tucker but endorsed and negotiated by Tucker only; $15,000 in checks made to Respondent, which he endorsed and negotiated; $20,000 was deposited in a certificate of deposit in Respondent's name; $50,000 was deposited in a certificate of deposit in Respondent's name as "Attorney for Eva Berg"; $15,000 was deposited in Respondent's checking account; $14,970.51 was deposited in an account bearing Respondent's and Berg's name for which Respondent was the only authorized signatory; and Respondent used $10,981.57 to make payments on his personal loans.

On December 28, 1990, Respondent cashed in the $50,000 certificate of deposit with earned interest, took $20,000 of the money in cashier's checks made out to him personally, deposited $15,000 in his own checking account, took $5,250 in cash, and deposited $10,000 in an account in his and Berg's names on which he was the only authorized signatory.

On February 19, 1991, Respondent cashed the $20,000 certificate of deposit which he had established in his own name and deposited the entire amount into his checking account. He proceeded to also use those funds as his own. The parties have stipulated to more than 150 transactions, transfers, deposits, and checks whereby Respondent used Berg's funds for his own purposes and not for Berg.[1]

Respondent never maintained any time records nor did he ever make any attempt to account for these funds or to keep them segregated from his own. After Berg was discharged from the hospital, she lived under the control of Tucker until December 1990, and Tucker's family lived in the home pur-

chased for Berg. Attorney Cone was never informed of any of these transactions. Berg never realized that her family farm had been sold.

On April 8, 1992, Respondent was charged with twelve counts of Theft, each a Class D Felony, and one count of Corrupt Business Influence, a Class C Felony, all as a result of the foregoing activities. After a trial by jury, Respondent was found guilty of eleven counts of Theft. He was sentenced to the Indiana Department of Correction for a total of twelve years.

Respondent does not challenge the factual basis of the foregoing findings and, indeed, the majority of these findings were stipulated.

■ Respondent claims, instead, that because Tucker and the Tucker family were indebted to him for legal services, and because the will written by him left all of Berg's assets to Tucker, Respondent was entitled to use Berg's assets to compensate himself for legal services. The untenable nature of this argument hardly warrants mention. Aside from the fact that Respondent could provide no time records or any other evidence which would remotely indicate if and how much was due him, the stipulated facts clearly prove that Respondent flagrantly abused the fiduciary relationship which he himself promoted. Transactions entered into during the existence of a fiduciary relationship are presumptively invalid as the product of undue influence. Transactions between an attorney and client are presumed to be fraudulent, and the attorney has the burden of proving that they were fair and honest. *Matter of Smith* (1991), Ind., 572 N.E.2d 1280, at 1285. The facts before us fail to disclose even an iota of evidence which could possibly support Respondent's argument.

■ To the contrary, the stipulated facts and the reasonable factual inferences clearly and convincingly establish Respondent's misconduct. While representing Tucker, the alleged exploiter of the elderly Berg, Respon-

---

1. The items on which Respondent spent Berg's funds included $250 to Darnell Farms for a Dalmatian puppy; $1,300 to Windbagger Balloons, of Carmel, Indiana, for rental of a fifteen foot inflatable snowman for display in front of Respondent's home during the Christmas season; and over $2,100 for a purchase at Davidson's Indiana Fur Company.

dent entered his appearance on behalf of Berg. He continued this blatantly obvious conflicting representation despite the fact that it was explicitly challenged by the trial judge. Respondent's subsequent maneuver in obtaining a power of attorney from Berg, while she was hospitalized in a psychiatric ward, convinces us of Respondent's sinister plan to control and appropriate Berg's assets. The acts that followed even more convincingly establish Respondent's initial motives. He sold Berg's farm, sold her grain, allowed Tucker to live in her house, and simply used more than $180,000 of her funds as his own, buying himself and friends frivolous and luxurious items. He engaged in conflict of interest, in violation of Prof.Cond.R. 1.7 and 1.9; he failed to preserve Berg's property, in violation of Prof.Cond.R. 1.15; he engaged in criminal acts, namely theft and conversion, which acts reflect adversely on his fitness as a lawyer and are in violation of Prof.Cond.R. 8.4(b); and he engaged in dishonesty, fraud and deceit, in violation of Prof.Cond.R. 8.4(c). Respondent's entire course of conduct is prejudicial to the administration of justice and violated Prof.Cond.R. 8.4(d) of the *Rules of Professional Conduct.*

Having concluded that the Respondent engaged in professional misconduct, this Court must now determine an appropriate sanction. A disciplinary proceeding is not intended for the purpose of punishment, but rather, to determine the fitness of an officer of the court to continue in that capacity and to protect the courts and public from unfit persons. *Matter of Smith, Supra,* at 1286; *Matter of Moore* (1983), Ind., 453 N.E.2d 971. It is difficult to image conduct which renders an attorney more unfit to practice law than this Respondent's actions. The hearing officer observed, and we concur, that the Respondent planned from the very beginning of his involvement, to frustrate the exploitation investigation against Tucker, ignored the trial court's advice to disqualify, venued the case out of the home county, hired another attorney but failed to inform him of the major financial transactions, and then proceeded to help himself to Berg's money. We are convinced that Respondent's conduct warrants the strongest possible sanction, disbarment.

It is, therefore, ordered that Respondent, Bob Good, is hereby disbarred.

Costs of this proceeding are assessed against the Respondent.