AMERICANS FOR The ARTS, The Poetry Foundation, and Lilly Endowment, Inc., Appellants–Respondents,

v.

RUTH LILLY CHARITABLE REMAINDER ANNUITY TRUST # 1 U/A JANUARY 18, 2002, National City Bank of Indiana, Trustee,

and

Ruth Lilly Charitable Remainder Annuity Trust # 2 U/A January 18, 2002, Trustee, National City Bank of Indiana, Trustee, Appellees–Petitioners.

No. 49A02–0512–CV–1162.

Court of Appeals of Indiana.

Oct. 19, 2006.

Richard A. Smikle, Brian J. Paul, Ice Miller LLP, Indianapolis, IN, Andrew J. Goodman, Kurzman Eisenberg Corbin

Lever & Goodman, LLP, New York, NY, Attorneys for Appellant Americans for the Arts.

Maryellen K. Bishop, Michael P. Bishop, Drewry Simmons Vornehm, LLP, Indianapolis, IN, Eugene J. Schiltz, Robert F. Coleman, Robert F. Coleman & Associates Chicago, IL, Attorneys for Appellant the Poetry Foundation.

Ben W. Blanton, John A. Gardner, Robert K. Stanley, Baker & Daniels, LLP, Indianapolis, IN, Attorneys for Appellant Lilly Endowment, Inc.

Micheal Rosiello, Stanley C. Fickle, Barnes & Thornburg, LLP, Edward O. DeLaney, LLC, Indianapolis, IN, David A. Baker, Elizabeth B. Herrington, McDermont Will & Emery LLP, Chicago, IL, Attorneys for Appellee National City Bank of Indiana.

## OPINION

BAKER, Judge.

The primary question presented by this appeal is whether National City Bank of Indiana (National City), as trustee of two charitable trusts created by Ruth Lilly's (Ruth) estate plan, was required to diversify the trust assets. Although as a general rule, trustees have a duty to diversify, the trust instrument may modify that duty by permitting the trustee to retain certain— or all—trust assets. Concluding that the relevant documents at issue herein sufficiently relieved National City of the duty to diversify the trust assets, we affirm the judgment of the trial court.

### FACTS [1]

Ruth is the sole surviving great-grandchild of Eli Lilly, the founder of Eli Lilly & Company (Lilly). In 1981, the Marion County Probate Court appointed National City to be conservator of Ruth's estate. In 2001, the probate court directed the bank to draft a new estate plan for Ruth, and on November 27, 2001, National City petitioned the probate court to implement certain changes in the estate plan pursuant to a statute permitting a court to authorize a conservator to:

> [m]ake gifts, outright or in trust, on behalf of the protected person to or for the benefit of prospective legatees, devisees or heirs, including any person serving as the protected person's guardian, or to other individuals or charities, to whom or in which it is shown that the protected person had an interest....

Ind.Code § 29-3-9-4(a). In its petition, National City asserted two primary reasons for the creation of Ruth's new estate plan: (1) Ruth, while subject to conservatorship protection but without court involvement, had executed twenty-two testamentary documents disposing in excess of $1 billion that likely would have generated years of costly and burdensome litigation upon her death; and (2) Ruth's existing plan generated significant, unnecessary taxes. National City, therefore, hoped to simplify, streamline, and improve the financial efficiency of the estate plan.

On November 28 and 29, 2001, National City sent notice to all interested parties, including the appellants, enclosing the petition and proposed estate plan and giving notice of a hearing on the petition on December 17, 2001. The interested parties, including the appellants and Ruth, took part in the process and were represented by sophisticated legal counsel. Indeed, the reputable firms representing the appellants included Cravath, Swaine &

---

1. We heard oral argument in Indianapolis on August 22, 2006. We commend counsel for their excellent written and oral presentations.

Moore LLP, Ice Miller LLP, Duane Morris LLP, and Bose McKinney & Evans LLP. For their efforts in this matter, the attorneys were paid nearly $250,000 in legal fees *from Ruth's estate.* The attorneys collectively spent well over 400 hours reviewing the proposed estate plan, proposing a number of changes, and raising extensive objections to the proposed plan. But none of the appellants objected to paragraph 10(b) of the trust documents, which is at issue on appeal and described more fully below. The probate court addressed all objections and ultimately approved National City's estate plan (the Estate Plan) on December 21, 2001. No party appealed from the probate court's approval of the Estate Plan.

Part of the Estate Plan created two charitable remainder annuity trusts (CRATs). CRAT # 1 provides Ruth with a lifetime annuity and CRAT # 2 gives money to six of her nieces and nephews for five years. Both CRATs name the same three charities as remainder beneficiaries—appellant-respondent The Poetry Foundation (Poetry), which is to receive 35% of the remaining assets of the CRATs, appellant-respondent Lilly Endowment, Inc. (Lilly Endowment), which will also receive 35% of the remaining assets, and appellant-respondent Americans for the Arts (AFTA), which will receive 30% of the remaining assets. National City is the trustee of, and has sole investment discretion for, both trusts.

The language of the trust documents that is at issue in this case is contained in paragraph 10 of the CRATs and is the same in both documents. In pertinent part, paragraph 10(b) provides that, in its capacity as trustee of the CRATs, National City:

> shall have the following powers and rights and all others granted by law

* * *

> (b) *To retain indefinitely any property received by the trustee* and invest and reinvest the trust property in stocks, bonds, mortgages, notes, shares of stock of regulated investment companies or other property of any kind, real or personal, including interests in partnerships, limited liability companies, joint ventures, land trusts or other title-holding trusts, investment trusts or other business organizations as a limited or general partner, shareholder, creditor or otherwise, and *any investment made or retained by the trustee in good faith shall be proper despite any resulting risk or lack of diversification or marketability and although not of a kind considered by law suitable for trust investments.*

Appellant's App. p. 189–90, 202 (emphases added).

On January 18, 2002, the CRATs were funded as planned—entirely with Lilly stock—3,155,404 shares in CRAT # 1 and 657,376 shares in CRAT # 2. On that date, Lilly stock was selling at approximately $75 per share, giving the CRATs a combined initial value of approximately $286 million. By March 2002, National City had formulated a draft Investment Policy Statement for the CRATs, the purpose of which was "to identify and present the investment objectives, investment guidelines and performance measurement standards" for the CRATs' assets. Appellants' App. p. 2507–14. National City sold significant portions of the Lilly stock held by the CRATs by July 2002, and by October 2002, most of the Lilly stock—the value of which had declined significantly since January 2002—had been sold and the CRATs were fully diversified.

In November 2002, National City petitioned the probate court to approve of "its

formulation and implementation of the diversification of the investment in Eli Lilly and Company stock held by the [CRATs]." *Id.* p. 183. Poetry and AFTA objected and counterclaimed, alleging that the bank's delay in diversifying was negligent, a breach of fiduciary duty, and a violation of the Indiana Uniform Prudent Investor Act (PIA),[2] and seeking to surcharge the bank for the alleged resulting loss to the CRATs.[3]

On June 1, 2005, National City filed a motion for summary judgment, arguing that its actions with respect to the CRATs were permitted by paragraph 10(b) of the CRATs, which gave National City the power "to retain indefinitely any property" it received as trustee and provided that "any investment made or retained by the trustee in good faith shall be proper despite any resulting risk or lack of diversification." *Id.* p. 189–90, 202. National City argued that the first clause eliminated its duty to comply with the PIA and that the latter clause exculpated it from any liability for failing to timely diversify the assets of the CRATs. Poetry and AFTA responded that: (1) National City was not excused from complying with the PIA, (2) the exculpatory clause is invalid because the bank, as trustee, put it in the trusts to protect itself, and (3) Indiana Code section 30–4–3–32(b) prohibits trustees from being exculpated against liability for "reckless indifference to the interest of the beneficiaries."

On December 2, 2005, the probate court granted National City's motion for summary judgment, concluding briefly that the exculpatory clause is "valid and binding upon the parties" and that "[t]he investments made or retained by the trustee during the accounting period" were "made or retained in good faith" and were "proper." Appellants' App. p. 41–46. The appellants now appeal.

## DISCUSSION AND DECISION

The appellants argue that the trial court erred in granting summary judgment in favor of National City. Specifically, the appellants raise the following arguments: (1) paragraph 10(b) of the CRATs does not override or nullify the default rule set forth in the PIA requiring the trustee to diversify trust assets; and (2) the exculpatory clause is fully invalid or, at the least, partially invalid to the extent that it attempts to relieve National City of liability for a breach of its statutory duty not to act with reckless indifference to the interests of a beneficiary.

### I. Standard of Review

As we consider the appellants' contention that the trial court erred in granting summary judgment in favor of National City, we observe that summary judgment is appropriate only if the pleadings and evidence considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 909 (Ind.2001); *see also* Ind. Trial Rule 56(C). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Owens Corning,* 754 N.E.2d at 909. Additionally, all facts and reasonable infer-

---

**2.** Ind.Code § 30–4–3.5–1 et seq.

**3.** Lilly Endowment also submitted a pleading to the probate court, but its pleading merely requested that the court treat the charitable remainder beneficiaries identically. Similarly, Lilly Endowment has joined this appeal as a nominal appellant, but rather than taking sides in the substantive issues on appeal, it merely requests that, whatever our decision, we treat Poetry, AFTA, and Lilly Endowment identically.

ences from those facts are construed in favor of the nonmoving party. *Id.* If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *Id.*

An appellate court faces the same issues that were before the trial court and follows the same process. *Id.* at 908. The party appealing from a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

■ The meaning of the provisions of a trust document is a matter of law to which we apply a de novo standard of review. *Malachowski v. Bank One,* 590 N.E.2d 559, 565–66 (Ind.1992).

### II. The Appellants' Silence

Before addressing the substance of the appellants' arguments, we have concluded that it is incumbent upon us to consider the appellants' silence prior to their responses to the underlying pleading filed by National City. In particular, at no point did the appellants object to the clauses at issue in paragraph 10(b) of the CRATs, which they now argue are inherently unenforceable, or to National City's alleged conflict of interest stemming from the three proverbial hats—Ruth's conservator, drafter of the documents, and trustee—that it has worn throughout the parties' relationship.

Initially, we again emphasize that National City, acting as Ruth's conservator, voluntarily stepped in to overhaul her extraordinarily—and unnecessarily—complicated estate plan that was sure to result in protracted litigation and astronomical tax bills. After it had created a proposed

estate plan, the bank notified all interested parties, including the appellants, provided them with a copy of the proposal, and afforded them time to read, digest, comment upon, and, if necessary, object to the document. The interested parties, including the appellants and Ruth, through her counsel, took extensive part in the process and were represented by sophisticated legal counsel. Indeed, the appellants' attorneys proposed a number of changes and raised numerous objections to the proposed plan. But Ruth, the appellants, and their respective attorneys were silent with respect to paragraph 10(b) and National City's relationship to the parties and the process.

#### A. Failure to Object to the Clauses in Paragraph 10(b)

■ The appellants first insist that they were not required to object to paragraph 10(b) because "[t]here is no duty on a beneficiary to take a position with regard to approval or disapproval of a proposed act of the trustee." *Stowers v. Norwest Bank Ind., N.A.,* 624 N.E.2d 485, 489 (Ind. Ct.App.1993). More specifically, " '[t]he mere fact that the beneficiary knows that the trustee is committing a breach of trust and fails to make any objection is not sufficient to preclude him from holding the trustee liable for the breach of a trust.' " Poetry Br. p. 23 (quoting Scott, *The Law of Trusts* 329 (4th ed.1988)).

This authority is inapposite to the question presented here. We are not determining whether the appellants were required to object to an *action* or a proposed action taken by National City, namely, its failure to diversify. Rather, we are determining whether the appellants were required to object to *a provision* in the proposed estate plan just as they objected to and proposed changes to other provisions in the proposed plan. At the time

the parties were negotiating the terms of the CRATs, National City had neither taken nor contemplated taking an action that would constitute a breach of trust. That is simply not the issue. National City and the probate court afforded the appellants and their attorneys every opportunity to question or object to every facet of the proposed estate plan. The appellants chose not to quarrel with any portion of paragraph 10(b), and they are not now entitled to turn back the clock and claim that, in hindsight, the clauses are problematic and unenforceable.[45]

■ The appellants next contend that that National City should have called paragraph 10(b) to their attention or to the attention of Ruth, her family members, or the probate court. They observe that National City's employee who was placed in charge of the CRATs characterized the trusts as "very complicated" and noted that two months after the Estate Plan was approved by the probate court, he and the rest of the bank's professionals were "still trying to understand the impact of the plan...." Appellants' App. p. 2466. Thus, according to the appellants, National City "buried" the Exculpatory Clause in a complicated document at the end of one of seventeen clauses labeled "Trustee's Powers." Poetry Br. p. 23.

At the risk of being redundant, we again emphasize that the appellants were all represented by numerous sophisticated attorneys who are experienced in the area of trusts and estate planning. The attorneys spent well over 400 hours and amassed

nearly $250,000 in legal fees poring over the documents, formulating objections and proposed changes, and presenting their objections and suggestions to the probate court. No party was naïve, unrepresented, or taken advantage of in this situation. Moreover, paragraph 10(b) is neither buried nor misleadingly labeled. Indeed, it takes up one-half of one page in a ten-page document. The language is signaled with a double-spaced lead-in indicating that the provisions to follow encompass all of the powers and rights of the trustee in administering the document. Under these circumstances, we do not conclude that National City was required to call paragraph 10(b) to the attention of any involved parties.

■ Finally, the appellants contend that "the trustee must establish the substantive fairness of the clause *regardless* of the notice—or lack thereof—to those at risk." Poetry Br. p. 23 (emphasis in original). Thus, even though the appellants raised no objection to paragraph 10(b), National City must still establish its substantive fairness. The probate court did not require the bank to make this showing, and the appellants contend that there is no way that National City could have done so because the clause provides no benefit to anyone other than the bank itself.

After reviewing the cases relied upon by the appellants for their argument regarding the obligation to establish the substantive fairness of the clause at issue, we conclude that these cases are distinguish-

---

4. Although the appellants concede that they did not object to the clauses, they insist that they did not affirmatively approve of the clauses either. This is a semantic difference of no consequence to our analysis.

5. The appellants also argue that they did not object to paragraph 10(b) because it is neutral on its face and, consequently, they understood

that even with paragraph 10(b) in place, National City was required to diversify the trust assets. As will be more fully explained below, it is apparent from reading paragraph 10(b) in its entirety that it explicitly lessens the duty to diversify. Thus, the appellants should have objected to the extent that they expected the bank to diversify the assets of the CRATs.

able inasmuch as they involve self-dealing fiduciaries who exerted undue influence over a subordinate party to take advantage of a position of trust. See *Matter of Good,* 632 N.E.2d 719, 721 (Ind.1994) (attorney drafted will for client and was then convicted of 11 counts of theft based on transactions he made in client's name; court noted that transactions between attorney and client are presumed fraudulent and attorney has burden of establishing the transaction's fairness); *Hudson v. Davis,* 797 N.E.2d 277, 285 (Ind.Ct.App.2003) (fiduciary of elderly man entered into "exceptionally favorable" contract with him for purchase of property); *Clarkson v. Whitaker,* 657 N.E.2d 139, 144 (Ind.Ct. App.1995) (attorney drafted will under which he became beneficiary); *Givens v. Rose,* 178 Ind.App. 590, 598–99, 383 N.E.2d 448, 454 (1978) (fiduciary of disabled woman removed money from bank account after her death); *Teegarden v. Ristine,* 57 Ind.App. 158, 106 N.E. 641, 643 (1914) (attorney acting as widow's real estate agent induced her to execute deed to attorney's wife, selling property for less than one-third of its valued amount).

Under those circumstances, the burden deservedly shifts to the fiduciary to prove that the transaction was fair. Here, on the other hand, the bank owed no duty to the appellants at the time of the drafting of the CRATs, the appellants participated in the drafting, there is no evidence of self-dealing by National City, and the probate court approved the CRAT documents. Thus, the bank has no obligation to prove the substantive fairness of the Exculpatory Clause.

The appellants insist that they have alleged—and raised a material issue of fact with respect to—self-dealing on the part of National City. In particular, they note that there is no dispute that the bank, acting as conservator of Ruth's estate, drafted the Estate Plan and the CRATs. Additionally, they contend that no parties benefited from paragraph 10(b) other than National City itself.

We observe, however, that there is no evidence that National City "benefited" from the insertion of paragraph 10(b). Its failure to diversify the assets of the CRATs did not result in a windfall or a profit of any kind to the bank. Unlike the cases in which a trustee is found to have engaged in self-dealing, here, National City did not receive a profit or benefit at the expense of the beneficiaries of the CRATs. Thus, even if we were to conclude that the bank is required to establish the substantive fairness of the clauses at issue, we see nothing in the record tending to suggest that it would be unable to make such a showing.

### B. Failure to Object to Alleged Breach of Trust and/or Fiduciary Duty

■ Dovetailing with their argument regarding alleged self-dealing on the part of the bank, the appellants next contend as a general matter that by inserting the clauses at issue into paragraph 10(b), National City committed an inherent breach of trust and/or fiduciary duty.

Before addressing the merits of this claim, we must again observe that at no point prior to the underlying litigation did the appellants object to the fact that National City was acting as Ruth's conservator, drafting the documents, and preparing to become the trustee of the CRATs. Moreover, although the appellants became concerned about National City's failure to diversify the assets of the CRATs and even filed counterclaims against the bank for its handling of the trusts, they have never—to this day—sought to have National City removed as trustee.

The appellants' failure to object to the bank's status and actions notwithstanding, we note briefly that there is no evidence in

the record to support a conclusion that by including the clauses at issue, the bank in any way breached a fiduciary duty to or abused a confidential relationship with Ruth. Indeed, we note that neither Ruth nor Lilly Endowment has ever complained about the bank's conduct with respect to the CRATs. Ruth and the appellants were represented by experienced and sophisticated legal counsel who undertook an exhaustive review of the proposed estate plan and were afforded an opportunity to raise objections and suggest revisions. The probate court oversaw the entire process. There is simply no evidence in the record that the bank exerted undue influence over Ruth or that it in any way acted improperly in drafting and negotiating the terms of the CRATs.

The above discussion notwithstanding, we will address the substance of the appellants' arguments.

### III. Retention Clause

■ The appellants contend that the clause in the trust documents providing general authorization for National City to retain investments (the Retention Clause) does not override or nullify the statutory provision of the prudent investor rule requiring the trustee to diversify the trust assets. The Retention Clause, which is found at the beginning of paragraph 10(b) in the CRATs, provides that National City is empowered to "retain indefinitely any property received by the trustee...." Appellants' App. p. 189–90, 202.

The PIA provides generally that a trustee "shall invest and manage trust assets as a prudent investor would...." Ind.Code § 30–4–3.5–2(a). The Act goes on to mandate that a trustee *"shall diversify the investments of the trust* unless the trustee reasonably determines that, because of special circumstances, the purposes of the trust are better served without diversifying." *Id.* § –3 (emphasis added). The

PIA, however, also provides that the prudent investor rule "may be expanded, restricted, eliminated, or otherwise altered by the provisions of a trust. A trustee is not liable to a beneficiary to the extent that the trustee acted in reasonable reliance on the provision of the trust." *Id.* § –1(b).

■ The appellants concede that the prudent investor rule, including the duty to diversify, may be altered by the trust document. They insist, however, that in this case, the general power contained within the Retention Clause is insufficient to override the duty to diversify. They look first to the Restatement (Third) of Trusts, which provides as follows:

> A general authorization in an applicable statute or in the terms of the trust to retain investments received as part of a trust estate does not ordinarily abrogate the trustee's duty with respect to diversification or the trustee's general duty to act with prudence in investment matters.

Restatement (Third) of Trusts § 229 cmt. d. First, we observe that the Restatement is "not a statute whose precise wording is entitled to deference as an act of an equal branch of government." *PSI Energy, Inc. v. Roberts,* 829 N.E.2d 943, 958 (Ind.2005). Furthermore, we observe that comment (d) goes on to provide that the terms of a trust "may permit the trustee to retain all of the investments made by the settlor, or a larger proportion of them than would otherwise be permitted." Thus, the Restatement (Third) of Trusts leaves open a comfortable window enabling the settlor to lessen the trustee's duty to diversify by including a clause to that effect in the trust instrument.

Turning next to case law, we observe that the issue presented here is one of first impression. But the appellants direct our

attention to a number of cases that they claim provide a generally applicable rationale in support of the argument. In all of these cases, the court concluded that a general retention clause was insufficient to exempt the trustee from the duty to diversify and essentially required that the retention clause explicitly name the specific stock to be retained. After reviewing the cases, however, we conclude that they are nearly all inapposite to the situation presented here because they either involve stock that was in some way directly related to the trustee or an allegation that the trustee acted in bad faith. *See Robertson v. Central Jersey Bank & Trust Co.,* 47 F.3d 1268, 1271 (3rd Cir.1995) (95% of trust assets were trustee's own corporate stock); *Rutanen v. Ballard,* 424 Mass. 723, 678 N.E.2d 133, 137–38 (1997) (allegation that trustee acted in bad faith); *First Alabama Bank of Huntsville, N.A. v. Spragins,* 515 So.2d 962, 963–64 (Ala.1987) (70% of trust assets were trustee's own corporate stock). Here, on the other hand, National City is in no way connected to Lilly nor have the appellants alleged that the bank acted in bad faith. Thus, the extra layer of protection and specificity that may be required in such cases is not needed here.

Recently, in *Wood v. U.S. Bank, N.A.,* the Ohio Court of Appeals considered a trust document that granted the trustee the power "[t]o retain any securities in the same form as when received, including shares of a corporate Trustee ..., even though all of such securities are not of the class of investments a trustee may be permitted by law to make and to hold cash uninvested as they deem advisable and proper." 160 Ohio App.3d 831, 828 N.E.2d 1072, 1074–75 (Ohio Ct.App.2005). Notwithstanding the fact that the trust referenced the specific stock in question, the court held that "even if the trust document allows the trustee to 'retain' assets that

would normally be suitable, the trustee's duty to diversify remains, unless there are special circumstances." *Id.* at 1074.

We observe, however, that the *Wood* court held that the trust instrument could have eliminated the duty to diversify if it had included the requisite authorizing language:

Had [the settlor] wanted to eliminate [the trustee's] duty to diversify, he could simply have said so. *He could have mentioned that duty in the retention clause. Or he could have included another clause specifically lessening the duty to diversify.* But he did not. We hold that the language of a trust does not alter a trustee's duty to diversify unless the instrument creating the trust clearly indicates an intention to do so.

*Id.* at 1077–78 (emphasis added). Here, on the other hand, the CRATs explicitly eliminate the duty to diversify and exonerate the trustee for its failure to do so. Specifically, the documents authorize National City to "retain indefinitely" the trust assets and then proceed to provide explicitly that "any investment made or retained by the trustee in good faith shall be proper despite any resulting risk *or lack of diversification* ...." *Id.* p. 863–64 (emphasis added). Thus, the CRATs contain precisely the type of language suggested by the *Wood* court, inasmuch as they include a clause explicitly lessening the duty to diversify.

The record herein reveals no relationship between National City and the Lilly stock that was retained as an asset of the CRATs for a period of time. Furthermore, there is no allegation that National City acted in bad faith and no evidence supporting a conclusion that it engaged in self-dealing. Under these circumstances, we conclude that the general Retention Clause in the CRATs combined with the clause explicitly lessening the trustee's

duty to diversify is sufficient to except National City from the default duty to diversify trust assets.

### III. Exculpatory Clause

Next, the appellants contend that the Exculpatory Clause in the CRATs, which purports to relieve National City of liability for investment decisions unless the bank acted in bad faith, is either fully or partially invalid. First, they argue that the entire clause is invalid because it is the product of National City's abuse of its confidential relationship with Ruth as the conservator of her estate and the trustee for the CRATs. Second, they contend that even if the Exculpatory Clause is valid in part, it does not relieve National City of statutory liability for actions that are taken with reckless indifference to the interests of a beneficiary.

### A. Validity of Clause

■ The appellants first argue that the Exculpatory Clause is entirely invalid. The clause, found in paragraph 10(b) of the CRATs, provides that "any investment made or retained by the trustee in good faith shall be proper despite any resulting risk or lack of diversification...." Appellants' App. p. 189–90, 202. The appellants do not contend that National City acted in bad faith when it failed to diversify the assets of the CRATs.

The appellants base their argument that the Exculpatory Clause is invalid upon statutory language providing that "[a] provision that relieves the trustee of liability for breach of trust is ineffective if it is inserted in the trust instrument as the result of an abuse by the trustee of a fiduciary or confidential relationship to the settlor." Ind.Code § 30–4–3–32(b). As noted above, however, there is no evidence in the record supporting a conclusion that National City committed any actions constituting an abuse of its fiduciary or confidential relationship to Ruth. Given the absence of evidence establishing National City's self-dealing, breach of fiduciary duty, or abuse of its confidential relationship with Ruth, we cannot conclude that the Exculpatory Clause is fully invalid.

### B. Reckless Indifference

■ The appellants next argue that even if the clause is not entirely invalid, it is partially invalid to the extent that trustees may not be exonerated for behavior that evinces a reckless indifference to the interest of the beneficiaries. Specifically, the appellants note that Indiana Code section 30–4–3–32(b) provides as follows:

> A provision in the trust instrument is not effective to relieve the trustee of *liability for breach of trust* committed in bad faith, intentionally, or with reckless indifference to the interest of the beneficiary, or of liability for any profit that the trustee has derived from a breach of trust.

(Emphasis added).

■ But this statute applies only if there has been a breach of trust, which is essentially a breach of fiduciary duty. *Shriner v. Sheehan*, 773 N.E.2d 833, 846 (Ind.Ct.App.2002) (holding that a cause of action for breach of trust is a claim for breach of fiduciary duty). As noted above, as a general rule a trustee has a fiduciary duty to diversify trust assets. I.C. § 30–4–3.5–3. But we have already concluded herein that the CRATs modified the general rule, with the result that National City had no obligation to diversify the trust assets. Consequently, the bank committed neither a breach of fiduciary duty nor a breach of trust. Under these circumstances, we cannot conclude that Indiana Code section 30–4–3–32(b) applies to the CRATs.

Finally, the appellants argue that whether diversification was properly and timely accomplished is an issue of fact not appropriate for summary judgment adjudication. *Estate of Janes*, 90 N.Y.2d 41, 659 N.Y.S.2d 165, 681 N.E.2d 332, 336 (1997)

(holding that whether divestiture of an imprudently-held investment occurred within a reasonable time is a factual determination to be made by the trial court). As a general rule, that statement may be true, but the Exculpatory Clause modifies that rule by including an explicit standard with which to judge the actions of the trustee. Specifically, the Exculpatory Clause provides that so long as National City acted in good faith, any investment it retained is proper even if there was a resulting lack of diversification. Thus, because of the language included in paragraph 10(b) of the CRATs, all we need to determine is whether National City acted in good faith. Inasmuch as the appellants have never argued that the bank acted in bad faith, the trial court properly determined as a matter of law that National City acted in good faith in its administration of the CRATs and that the bank should not be held liable for its failure to diversify the assets of the CRATs.

The judgment of the trial court is affirmed.

SULLIVAN, J., and MAY, J., concur.