**Richard P. SMALL, d/b/a RPS Mouldings, Plaintiff–Appellant,**

v.

**BEVERLY BANK, an Illinois banking corporation, Defendant–Appellee.**

No. 90–1332.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 12, 1990.

Decided July 9, 1991.

Sherwin J. Malkin, Bobbitt & Associates, Chicago, Ill., for plaintiff-appellant.

Joseph A. Coakley, Coakley & Smith, Oak Lawn, Ill., for defendant-appellee.

Before BAUER, Chief Judge, FLAUM and KANNE, Circuit Judges.

BAUER, Chief Judge.

In April 1986, Muench Millwork Company ("Muench") filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (1978). Because it is in the best interest of the creditors to preserve the value of the debtor's business as a going concern, *see Matter of Jartran, Inc.*, 732 F.2d 584, 586 (7th Cir. 1984), Muench was allowed to remain in possession of its assets and continue to operate its business as a debtor-in-possession. Accordingly, on May 9, 1986, the bankruptcy court entered an "Agreed Order for Interim Adequate Protection and for Use of Cash Collateral" ("Agreed Order") that provided that Muench could keep operating by using the cash collateral that secured its loan from the Beverly Bank ("Bank"). This kind of "magnanimity" does not come without strings. When a bankruptcy court allows a debtor the use of cash collateral, the debtor's creditors in exchange may be granted extra protection. In this case, the Bank was granted a lien pursuant to §§ 361(2) and 363(e) of the Bankruptcy Code on all of Muench's post-petition personal property, including its entire inventory. The Agreed Order stated that notice was to be sent to Muench's twenty largest creditors and that "no further action or filing under the Uniform Commercial Code or otherwise need be made to perfect the liens granted herein." Agreed Order at 2.

Two years later, RPS Mouldings ("RPS") sold some oak lumber to Muench. Despite Muench's financial shakiness, Richard P. Small, RPS's owner, fully expected to be paid in full for the sale and delivery of the wood. He had been assured by Muench's president and by the trustee in bankruptcy that the company had sufficient funds to cover the bill. Unfortunately for Small, Muench incorporated the oak into its inventory of finished millwork products without paying for it. The finished products using Small's oak were worth $27,193.61. Worse yet for Small, the Bank held a $545,696.86 lien on Muench's equipment and inventory, and the Internal Revenue Service held a valid lien on the bankruptcy estate for $157,539.61 in unpaid taxes. After the Chapter 11 proceeding was converted to a liquidation pursuant to Chapter 7 of the Bankruptcy Code, the Bank acquired possession of Muench's inventory, including the millwork produced from RPS's lumber. On January 9, 1989, pursuant to the Illinois Commercial Code, Ill.Rev.Stat.1961 ch. 26, ¶¶ 1–101 to 12–102, the Bank sold Muench's inventory at a private sale. The proceeds of the sale were applied to the pre-bankruptcy petition debt that Muench owed to the Bank.

Small filed suit in federal court under diversity jurisdiction, claiming that he had an equitable lien on the Muench inventory containing his lumber materials that was superior to the lien rights of the Bank. He further alleged that the Bank was unjustly enriched when it sold the wood at the private sale and that it unlawfully converted the $27,193.61. A federal magistrate issued a Report and Recommendation that was adopted by the district court granting the Bank's motion to dismiss the complaint. The court held that, because the Bank was the holder of a pre-petition security interest in Muench's inventory, it had superpriority over the proceeds of the sale of the inventory. The court further held that Small's complaint failed to establish the elements of an equitable lien or a conversion. It is from that judgment that Small appeals.

■ We review the grant of a motion to dismiss *de novo*. *See Rothner v. City of Chicago*, 929 F.2d 297, 302 (7th Cir.1991). In such a review, we assume the truth of all well-pleaded factual allegations and make all possible inferences in favor of the plaintiff. *See Rogers v. United States*, 902 F.2d 1268, 1269 (7th Cir.1990). The governing state law will be that of Illinois. *See* Uniform Commercial Code § 9–103(3)(b) ("the law (including the choice of law rules) of the jurisdiction in which the debtor is located governs the perfection and effect of perfection or non-perfection of the security interest.").

As discussed below, Small cannot prevail under the Bankruptcy Code. He argues, therefore, that his is the perfect case for application of the equitable lien doctrine,

which holds that courts of equity may create the right to have property subjected to payment of a claim "out of general considerations of right and justice as applies to the relationship of the parties and the circumstances of their dealing." *Calacurcio v. Levson*, 68 Ill.App.2d 260, 263, 215 N.E.2d 839, 841 (1966). Small submits that the Bank's sale of Muench's inventory, which contained materials that were purchased with the Bank's knowledge and consent and for which no payment was made, "constitutes as flagrant an example of unjust enrichment as can be found. It is precisely this kind of injustice which the doctrine of equitable liens was created to obviate." Appellant's Brief at 8. The Bank, on the other hand, argues, first, that Small failed to allege the elements necessary to establish an equitable lien, and second, that even if he had, the bankruptcy court's Agreed Order gave the Bank a post-petition superpriority lien on Muench's assets.

■ Who has the superior claim? To answer that question, we first must determine whether the Bank had a perfected security interest. If it did, then the equitable lien asserted by Small, as an unperfected security interest in personalty, would be subordinate to the Bank's perfected security interest. *See* Ill.Rev.Stat.1961 ch. 26, ¶ 9–301(1)(a) and 9–312(3) (In the case of conflicting security interests in personal property, a perfected security interest is superior to an unperfected security interest in the same inventory.). According to the Illinois Commercial Code, a security interest is "perfected" "when the secured party has taken whatever steps are necessary to give him such an interest." Ill.Rev. Stat. ch. 26, ¶ 9–301 comment 1. Small contends that the Bank neglected to take one very necessary step: it failed to file its lien with the State as required by section 9–302 of the Illinois Commercial Code. The Bank considered that "necessary" step quite unnecessary because, in the Agreed Order, the bankruptcy court stated that "[t]he liens granted herein to the Beverly Bank and the IRS shall be valid, perfected, and enforceable without any further action by the Debtor, the IRS, or Beverly Bank,

and without the execution or recordation of any financing statements, security agreements, or other documents." Agreed Order at 3. That language appears to be dispositive of the issue, but not to Small. He argues that priority among liens is determined by state law, and because there is nothing in the Bankruptcy Code that authorizes the bankruptcy court to override state law with regard to the perfection of liens, the district court erred in ruling that, on the basis of the language in the Agreed Order, the Bank had a perfected lien.

Small fails to see the proverbial forest for the trees. The Bank stands first in line for the proceeds from the sale of Muench's inventory because it has superpriority status pursuant to several provisions in the Bankruptcy Code. A perfected lien may be created by "judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). The Agreed Order granting the Bank a "valid, perfected, and enforceable" lien fills the bill. Three other sections of the Code, however, seal Small's fate. Section 363(e) grants the creditor protection if the debtor remains in possession of the property. Section 364(d)(1)(B) is based on the policy of inducing creditors to extend new credit to a trustee or a debtor-in-possession. It provides that if the bankruptcy trustee is authorized to continue to operate the business of the debtor, the bankruptcy court may authorize the obtaining of credit secured by a lien if there is adequate protection of the interest of the holder on the lien of the property. Section 507(b) states that, if a trustee provides adequate protection to a creditor with a lien on the property of the debtor and if, notwithstanding such protection, the creditor has a claim allowable under section 363 from the use, sale, or lease of such property or from the granting of lien under section 364(d), then the creditor's claim has priority over every other claim. *See generally* D. Cowans, 2 *Bankruptcy Law and Practice* § 12.23 (1989). The import of these provisions is clear: the Bankruptcy Code offers substantial protection to a lender willing to take the risk of extending credit to a trustee or debtor-in-

possession. With this statutory protection in mind, the bankruptcy court granted the Bank a perfected lien with superpriority status as *quid pro quo* for allowing Muench to keep operating with the cash collateral that secured its loan from the Bank.

■ Suggesting that *Pearlstein v. U.S. Small Business Administration*, 719 F.2d 1169 (D.C.Cir.1983), stands for the proposition that priority among liens is determined by state law, Small urges us to grant priority status to his equitable lien because of the Bank's failure to file a financing statement pursuant to the Illinois Uniform Commercial Code. Small's reliance on *Pearlstein* is misplaced. First, the Bank was not required to file a financing statement in order to perfect its lien. The lien the Bank obtained from the bankruptcy court already was perfected: "A creditor with a secured claim does not have to file a proof of claim to maintain its lien." B. Weintraub and A. Resnick, *Bankruptcy Law Manual* § 5.11 at 5–52 (1986). Moreover, under Illinois law, an equitable lien is ineffective against a creditor obtaining a lien by legal proceedings. *Matter of Einoder*, 55 B.R. 319, 328 (Bank.N.D.Ill.1985).

■ Second, even if we accept Small's argument regarding priority between liens, the record reveals that he has failed to establish the elements of an equitable lien. An equitable lien is good in bankruptcy only if it would be sufficient under applicable state law. *See Avco Delta Corp. Canada Ltd. v. United States*, 484 F.2d 692, 703 (7th Cir.1973), *cert. denied sub nom. Canadian Parkhill Pipe Stringing, Ltd. v. United States*, 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 490 (1974). Under Illinois law, equitable liens arise in two general situations: when a written contract reflects the parties' intent to satisfy a debt from particular property, or when a court grants equitable relief in light of the parties' relationship and dealings. *See Einoder*, 55 B.R. at 328; *Hargrove v. Gerill Corp.*, 124 Ill.App.3d 924, 931, 80 Ill.Dec. 243, 248, 464 N.E.2d 1226, 1231 (2d Dist.1984). There is no allegation that Small and the Bank entered into a written contract that reflected

their intent to satisfy a debt from particular property and, in addition, the relationship between the parties does not warrant equitable relief. A particular claim may be disallowed or subordinated because of the fraudulent nature of the claim, or because of the bad faith or improper conduct by claimant. *See In re Wilnor Drilling, Inc.*, 29 B.R. 727, 730 (S.D.Ill.1982). Small failed to allege any fraud in his first amended complaint. Realizing that this lapse necessarily doomed his equitable lien theory, he filed a second amended complaint in which he alleged that he was induced to sell and deliver the lumber by the express representation of Muench and the trustee in bankruptcy that Small would be paid in full and that he would have a superior claim. The district court denied Small leave to file the second amended complaint. If only he were permitted the opportunity to prove fraud, his argument goes, then it could be shown that the lumber never became part of the bankruptcy estate and the Bank could not have obtained the right to sell it.

Too little, too late. The Bank never was a party to the transaction leading up to the sale and delivery of the lumber and thus had nothing to do with the allegedly fraudulent misrepresentations. Small's claim to an equitable subordination of the Bank's claim thus is unavailing. In any event, and, as noted by the district court, equitable liens of the kind claimed by Small have long been the object of scorn in bankruptcy. *Small v. Beverly Bank*, No. 89 C 3865, slip op. at 2, 1989 WL 152984 (N.D.Ill. Nov. 15, 1989). The *Einoder* court observed that, under the old bankruptcy act, "equitable liens were 'declared to be contrary to the policy' of bankruptcy law." 55 B.R. at 328 (citation omitted).

In hindsight, what Small should have done was to pursue his remedies under section 2–702(2) of the Illinois Commercial Code (seller's reclamation of goods) or make a written demand for reclamation of the lumber pursuant to section 546(c) of the Bankruptcy Code. Small also could have followed the scheme for post-petition creditors set forth in the Bankruptcy Code, which provides that, when a debtor-in-pos-

**950**

session such as Muench obtains unsecured credit in the ordinary course of business, such debt may be allowable under § 503(b)(1) as an administrative expense. *See* 11 U.S.C. § 364(a). To recover payment of the administrative expense, a postpetition creditor must file a request with the bankruptcy court. *See* 11 U.S.C. § 503(a). If the administrative expense is allowed, it has first priority in payment of claims before any distribution to other priority creditors or other general unsecured creditors. *See* 11 U.S.C. § 507(a)(1). Small failed to take these steps. He now cannot be heard to complain that his ill-founded equitable claim somehow takes priority over the Bank's perfected lien.

■ We consider Small's remaining claims without merit as well. The Bank was not unjustly enriched because it held a perfected superpriority security interest in Muench's equipment and inventory. The proceeds of the sale of the finished millwork were used to satisfy Muench's pre-petition indebtedness to the Bank. Neither was there a conversion, because title in the lumber passed to Muench when Small sold and delivered the oak. The Bank then lawfully acquired Muench's inventory as part of the Chapter 7 liquidation proceedings.

Small took a chance when he chose to sell to a company in the throes of insolvency. The risk did not pay off, and he failed to intervene in the bankruptcy proceedings in order to recoup his loss. He may not recover the value of the lumber now by means of an equitable lien. "A creditor who [fails] to take all the steps required to perfect a lien should not be allowed to fall back on an assertion of an equitable lien to frustrate the Bankruptcy Code policy of recognizing only perfected interests in property." *Einoder,* 55 B.R. at 328. The Bank's superpriority perfected lien was superior to any unperfected equitable lien Small could—but did not—acquire. The district court's judgment dismissing Small's complaint, therefore, is

AFFIRMED.