**In re NOVA TOOL & ENGINEERING, INC., Debtor.**

**Fibre Form Corporation, Plaintiff,**

v.

**Frederick J. Slamin, Trustee, Defendant.**

**Bankruptcy No. 96–11076.
Adversary No. 96–1098.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Nov. 9, 1998.

Grant Shipley, Fort Wayne, IN, Vincent Wagner, Indianapolis, IN, for Plaintiff.

Mark A. Warsco, Fort Wayne, IN, for Defendant.

### DECISION ON MOTION FOR SUMMARY JUDGMENT

ROBERT E. GRANT, Bankruptcy Judge.

The debtor, Nova Tool & Engineering, Inc. ("Nova"), filed a voluntary petition for relief under Chapter 11 on May 30, 1996. The defendant, Frederick Slamin, is the Chapter 11 trustee, appointed as a result of the court's order of October 23, 1996. By this adversary proceeding the plaintiff, Fibre Form Corporation ("Fibre Form"), seeks, inter alia, a declaratory judgment to the effect that the debtor's interest in an account receivable from Industrial Composites, Inc. ("ICI") is held in a constructive trust for Fibre Form's benefit and, thus, is not property of the bankruptcy estate. The argument is based upon § 541(d) of the United States Bankruptcy Code.[1] Fibre Form contends that Nova, though its president and other employees, misappropriated proprietary information belonging to it, concerning the design and production of speaker cones. The ICI receivable allegedly represents amounts due Nova as a result of its misuse of these stolen trade secrets, thus constituting proceeds of Fibre Form's misappropriated property. The matter is before the court on the trustee's motion for summary judgment and Plaintiff's response thereto.[2]

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Bankr.Rule 7056; Fed. R.Civ.P. 56(c). Thus, summary judgment is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

There are only three facts that are material to the court's decision and they are undisputed. First, a constructive trust was not imposed upon any of the debtor's assets prior

---

1. In relevant part, section 541(d) provides:
   Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold. 11 U.S.C. § 541(d).

2. A related issue is also presented in the main case, where the trustee seeks to sell the ICI receivable, subject to any claims against it. Fibre Form objects to the proposed sale, arguing that, since the receivable is held in a constructive trust and is not property of the estate, the trustee has no authority to use, sell or lease it, in any fashion whatsoever. This decision addresses that objection as well.

to the date of the petition. Second, to the extent possible, the trustee has returned any misappropriated property to Fibre Form, so that the estate is no longer in possession of any plans, drawings, computer files, designs, etc. representing its trade secrets. Third, the estate does not have sufficient assets to pay all creditors in full.

For the purposes of this decision, the court accepts as true Fibre Form's contentions that the information in question constitutes protectable proprietary information or trades secrets belonging to it, which were stolen by Debtor's employees and then used to perform work for ICI, creating the account receivable in question. The court also assumes that these circumstances are such that, but for the bankruptcy, Fibre Form would be entitled to a decision declaring the ICI receivable to be held in a constructive trust. Recasting things in this fashion squarely places before the court the penultimate issue raised by this adversary proceeding, which is: To what extent, if any, will a bankruptcy court recognize or enforce the right to a constructive trust which has not been imposed by another court prior to a petition for relief under title 11?

The Sixth Circuit confronted this issue in *In re Omegas Group, Inc.*, 16 F.3d 1443 (6th Cir.1994). In doing so, it reversed the bankruptcy court's imposition of a constructive trust over assets the debtor had acquired by fraud. Immediately prior to filing its bankruptcy petition, Omegas Group had received over $1,000,000 from Datacomp, for the purchase of computers which were never delivered. Datacomp claimed that it had been defrauded because the debtor knew bankruptcy was imminent, but had assured it otherwise. Datacomp argued that the funds it paid were held by the debtor in a constructive trust and, thus, were excluded from the bankruptcy estate by § 541(d).

The Sixth Circuit began its analysis by recognizing that some courts had been willing to use § 541(d) to exclude property that would be subjected to a constructive trust from the bankruptcy estate. Nonetheless, it criticized those decisions noting that:

> The problem with ... the analyses of the vast majority of courts which have ad-

dressed bankruptcy claims based upon constructive trust, is that a constructive trust is not really a trust. A constructive trust is a legal fiction, a common-law remedy in equity that may only exist by the grace of judicial action.

\* \* \* \*

> [A] claim filed in bankruptcy asserting rights to certain assets "held" in "constructive trust" for the claimant is nothing more than that: a claim. Unless a court has already impressed a constructive trust upon certain assets or a legislature has created a specific statutory right to have particular kinds of funds held as if in trust, the claimant cannot properly represent to the bankruptcy court that he was, at the time of the commencement of the case, a beneficiary of a constructive trust held by the debtor. *Omegas*, 16 F.3d at 1449.

In reaching its conclusion that "entitlement to a constructive trust is not an 'equitable interest' in the debtor's estate existing prepetition, excluded from the estate by § 541(d)", *Omegas* 16 F.3d at 1451, the Sixth Circuit acknowledged that property rights are determined by state law. *Omegas*, 16 F.3d at 1450. Nonetheless, it went on to state "that just because something is so under state law does not necessarily make it so under the Bankruptcy Code." *Id.* Instead, "state law must be applied in a manner consistent with federal bankruptcy law." *Id.* It then observed that constructive trusts were "fundamentally at odds with the general goals of the Bankruptcy Code" because they "clearly thwart[ ] the policy of ratable distribution ...." *Id.* at 1451 (citations omitted).

> The equities of bankruptcy are not the equities of common law. Constructive trusts are anathema to the equities of bankruptcy since they take from the estate and thus directly from competing creditors, not the offending debtor.

\* \* \* \*

> To permit a creditor, no matter how badly he was "had" by the debtor, to lop off a piece of the estate under a constructive trust theory is to permit that creditor to

circumvent completely the Code's equitable system of distribution.

In light of these provisions and in light of the overall purposes of the Code, § 541(d) cannot be properly invoked as an equitable panacea whenever the bankruptcy court thinks a claimant has been particularly burdened by a debtor's bad faith or bad acts. *Omegas*, 16 F.3d at 1452–1453. *Accord In re North American Coin & Currency Ltd.*, 767 F.2d 1573, 1575 (9th Cir. 1985).

While *Omegas* has not been universally adopted, *compare, In re Jeter*, 171 B.R. 1015, 1021–24 (Bankr.W.D.Mo.1994), *aff'd*, 73 F.3d 205 (8th Cir.1996); *Matter of Paul J. Paradise & Associates, Inc.*, 217 B.R. 452, 455–56 (Bankr.Del.1997); *Matter of United Imports*, 203 B.R. 162, 169–70 (Bankr.Neb.1996) (all following *Omegas* ) *with In re Dameron*, 206 B.R. 394 (Bankr.E.D.Va.1997), *aff'd*, 155 F.3d 718 (4th Cir.1998); *In re Reider*, 177 B.R. 412 (Bankr.D.Me.1994); *Curtis Mfr. Co. v. Plasti–Clip Corp.*, 933 F.Supp. 94 (D.N.H. 1995) (all rejecting *Omegas* ), the better reasoned decisions have followed it. Two of these courts, even as they embraced *Omegas*, have extensively analyzed that decision because they had questions concerning the basis for its analysis and were searching for the underlying rationale supporting its conclusion. *See In re Dow Corning Corp.*, 192 B.R. 428 (Bankr.E.D.Mich.1996); *In re Foos*, 183 B.R. 149, 157 n. 7 (Bankr.N.D.Ill.1995). *Foos* did not really resolve the conundrum but, instead, concluded that "a constructive trust (under both federal and Illinois law) is a remedy, not a real trust, that does not confer any property interest on the alleged 'beneficiary' until a court has decreed relief." *Foos*, 183 B.R. at 152. It also concluded that, even if grounds for the imposition of a constructive trust might otherwise exist, a bankruptcy court should not grant such relief because doing so would improperly undermine the Bankruptcy Code's statutory priorities, to the detriment of debtor's other creditors. *Id.* at 160–61. *Dow Corning*, on the other hand, did discern a basis for *Omegas'* rationale, which it found was "solely bankruptcy policy." *Dow Corning*, 192 B.R. at 440. Judge Spector concluded "that *Omegas* found … a conflict between the federal bankruptcy policy of ratable distribution and state property law on constructive trusts." *Id.* at 441. Consequently, a federal interest required that state law interests should be analyzed differently in a bankruptcy proceeding, so that "the bankruptcy policy of ratable distribution trumps state law on constructive trusts." *Id.*

This court agrees with the Sixth Circuit's approach to constructive trusts. We are not, however, willing to go so far as *Dow Corning* and conclude that the sole basis for that decision is bankruptcy policy. That would represent a dramatic departure from the often complex interplay of state and federal law traditionally associated with bankruptcy proceedings. The same rationale would allow the disregard of secured creditors' liens in the pursuit of the policy of "ratable distribution", yet only a few have ever argued that this should be done. *See e.g.* Lucian Bebchuck and Jesse Fried, *The Uneasy Case for the Priority of Secured Claims in Bankruptcy*, 105 Yale L.J. 857 (1996). *Contra,* Lynn LoPucki, *Should the Secured Credit Carve Out Apply Only in Bankruptcy? A Systems/Strategic Analysis*, 82 Cornell L.Rev. 1483 (1997). Admittedly, *Omegas* is consistent with the Bankruptcy Code's policy of a ratable distribution to creditors. Nonetheless, there is a more temperate explanation for its conclusion than the adherence to some overarching federal policy which justifies altering the outcome of legal proceedings. *Omegas* is also consistent with the equitable origin and purpose of constructive trusts. When viewed against that background, it stands for nothing more dramatic than the relatively unexceptional proposition that a court of equity, in considering whether to grant equitable relief, should consider the origin and purpose of the rule it is being asked to apply and the impact of its decision upon third parties.

The fundamental analytical error of the courts that are willing to apply § 541(d) to a constructive trust situation is that they fail to recognize the equitable origin of constructive trusts as a remedy for unjust enrichment and, instead, treat them as though they were precisely the same as express trusts. *Omegas*, 16 F.3d at 1449; *Foos*, 183 B.R. at 156.

Given the fact that both bodies of law use the term "trust" it is somewhat understandable that one might become confused and operate upon the proposition that they are somehow related. Yet, this is wrong. Constructive trusts and true trusts are entirely separate concepts which have nothing to do with one another.

■ The term "constructive trust" is not altogether a felicitous one. It might be thought to suggest the idea that it is a fiduciary relation similar to an express trust, whereas it is in fact something quite different from an express trust. An express trust and a constructive trust are not divisions of the same fundamental concept. They are not species of the same genus. They are distinct concepts. A constructive trust ... is imposed as a remedy to prevent unjust enrichment ....

... An[y] attempt to define a trust in such a way as to include constructive trusts as well as express trusts is futile, since a single definition which would include such distinct ideas would be so general as to be useless. Restatement of Restitution § 160 cmt. a (1937).

Consequently, a constructive trust is not a trust at all. It is, instead, "merely a device used by the court to work out an equitable result in the simplest fashion." Bogert, The Law of Trusts, § 471, p. 7 (2nd ed.1978).

■ Closely allied with the concept of constructive trusts are "equitable liens". They, too, are a remedy for unjust enrichment. Restatement, § 161. Indeed, a constructive trust and an equitable lien can be alternative remedies and the plaintiff may have the option of seeking to enforce one or the other, based upon whichever result will maximize its recovery. *See* Restatement § 161, cmt. a ("If the property falls in value, the equitable lien is [plaintiff's] better remedy; if it rises in value, the constructive trust is [plaintiff's] better remedy."). *See also* Restatement § 202. Unlike constructive trusts, equitable liens "have long been the object of scorn in bankruptcy proceedings" and "declared to be contrary to the policy of bankruptcy law." *Small v. Beverly Bank,* 936 F.2d 945, 949 (7th Cir.1991). Given the radically different reception the two concepts may receive, it seems odd that the success or failure of a claimant's endeavors to maximize its own recovery could turn on which of two alternative equitable remedies it asks the bankruptcy court to impose. Once courts recognize that constructive trusts have more in common with equitable liens than they do with the law of trusts, they will more readily treat them with scorn, than with the dignity reserved for the property interests excluded from the bankruptcy estate by § 541(d).

An approach to constructive trusts which emphasizes their historical origin as an equitable remedy, rather than being grounded in the law of trusts, can also be found in non-bankruptcy decisions in areas which, like bankruptcy, present uniquely federal issues. Thus, in admiralty, the response to a claimed priority based upon a constructive trust has been:

A constructive trust is not a title to or lien upon property but a mere remedy to which equity resorts in granting relief against fraud; and it does not exist so as to affect the property held by a wrongdoer until it is declared by a court of equity as a means of affording relief. *International Refugee Organization v. Maryland Drydock Co., et al.,* 179 F.2d 284, 287 (4th Cir.1950).

This is precisely the same rule applied by *Omegas* and the decisions which follow it. Similarly, in the area of federal taxation, where the claim was made that income should be taxed in one year rather than another because it was held in constructive trust, the Supreme Court, while recognizing the taxpayers' status as constructive trustees, stated:

A constructive trust is a fiction imposed as an equitable device for achieving justice. It lacks the attributes of a true trust .... [F]iction cannot change the "readily realizable economic value" ... the taxpayers enjoyed during a prior annual accounting period, antecedent to the declaration of the constructive trust. *Healy v. Commissioner of Internal Revenue,* 345 U.S. 278, 282–83, 73 S.Ct. 671, 674, 97 L.Ed. 1007 (1953).

Consequently, the Court chose to recognize the effect of a constructive trust as of the

time of its declaration, not as of the earlier date the taxpayers received the property subject to it.

The Seventh Circuit has not directly addressed the issue of the treatment constructive trusts should receive in bankruptcy. Generally, it has discussed them only in dicta and its comments are not entirely consistent. Thus, in *Belisle v. Plunkett*, 877 F.2d 512 (7th Cir.1989), it refused, on the basis of § 544(a)(3), to recognize a constructive trust in fraudulently acquired real estate and criticized decisions, such as *In re Quality Holstein Leasing*, 752 F.2d 1009 (5th Cir.1985), that suggested such a possibility. In the same decision, however, it also suggested that a constructive trust might somehow be akin to a lien when it stated that "[a] constructive trust ordinarily survives bankruptcy: the property may not be used to satisfy the debtor's obligations to other creditors ...." *Belisle*, 877 F.2d at 513. Earlier, in *In re Teltronics Ltd.*, 649 F.2d 1236 (7th Cir.1981), it said that "property obtained by fraud is not part of the bankruptcy estate", *id.*, at 1239, in refusing to require a state court receiver to turnover the proceeds of the debtor's consumer fraud to the bankruptcy trustee.[3] Yet, in *Matter of Iowa Railroad Co.*, 840 F.2d 535 (7th Cir.1988), where it was more directly confronted with the issue, it rejected an argument for the imposition of a constructive trust, noting that it arises where one "would be unjustly enriched" if it were allowed to retain the property in question. *Id.* at 545. It then went on to observe:

> There could be a decent claim of unjust enrichment if we had to decide whether the [Debtor's] stockholders or the [Plaintiffs] should get the money remaining in [Debtor's] coffers; it would unjustly enrich the stockholders to receive this money. But that is not the problem. The question is whether the [Plaintiffs] get all the money and [Debtor's other creditors] none; or whether all creditors share inadequate funds. [Debtor's other creditors] will not be "unjustly enriched" if they receive 70% of their debts (without interest). *Id.*

In reaching this conclusion, the Seventh Circuit referred to decisions which declined to exclude property from the bankruptcy estate based upon the argument that it was subject to a constructive trust. *Id.* (citing *In re North American Coin & Currency Ltd.*, 767 F.2d 1573 (9th Cir.1985))("we cannot accept the proposition that the bankruptcy estate is automatically deprived of any funds that state law might subject to a constructive trust."); *In re First Capital Mortgage Loan Corp.*, 60 B.R. 915 (Bankr.D.Utah 1986)(a constructive trust does not come into existence until judgment is entered), *rev'd on other grounds*, 872 F.2d 335 (10th Cir.1989). Furthermore, as noted earlier, in speaking of the closely related remedy of equitable liens, the Seventh Circuit has characterized them as "the object of scorn" and contrary to bankruptcy policy. *Small*, 936 F.2d at 949.

While not definitively answering the question, on balance, this review of the Seventh Circuit's decisions touching on the issue seems to reflect an antipathy toward recognizing equitable remedies which would diminish the bankruptcy estate. In particular, *Iowa Railroad* seems to suggest that, before imposing a constructive trust, the bankruptcy court should consider the purpose for doing so (whether it will prevent unjust enrichment) and the impact of doing so upon third parties (debtor's other creditors). These are the same propositions this court reads *Omegas* as espousing. *See* p. 6. Accordingly, the court concludes that the Seventh Circuit would follow *Omegas* when it is called upon to decide the extent to which a bankruptcy court should recognize the right to a constructive trust which has not been imposed prior to a petition for relief under the Bankruptcy Code.

Fibre Form attempts to distinguish *Omegas* by arguing that it did not enter into a voluntary transaction with the debtor but is, instead, the victim of theft. It then contends that, inasmuch as a thief does not acquire title, Nova had no title to the ICI receivable either, since it was created through the use of Fibre Form's stolen trade secrets. In

---

**3.** *Teltronics* was decided under the former Bankruptcy Act of 1898. The current Bankruptcy Code's provisions concerning property of the es-

tate are significantly different from and more inclusive than those contained in the old Act.

doing so it relies upon a statement in *Belisle* to the effect that if the debtor possessed a stolen diamond ring, it would not become property of the estate because the true owner's rights would be paramount, *Belisle,* 877 F.2d at 515, and upon *Winstandley v. Second National Bank of Louisville,* 13 Ind.App. 544, 41 N.E. 956, 957 (Ind.App.1895) where the Indiana Court of Appeals stated:

> It is an ancient rule of common law that the owner of a chattel who has been wrongfully deprived of its possession may follow it, and recover it, no matter what changes and transmutations it may have undergone, and however much it may be increased in value by the expenditure of labor upon it; provided only that the product is still a chattel and composed of the original materials. Thus, if logs be sawed into lumber and the lumber be made into an article of furniture, the owner of the logs may recover the article of furniture.

The court does not agree. While it wholeheartedly accepts Fibre Form's initial proposition—that a thief does not acquire title to the property it purloins—the conclusion it attempts to draw from this principle—that the estate has no title to the ICI receivable because it was created with Fibre Form's stolen property—is incorrect.

> A thief does not ordinarily become the owner of property he steals; he has mere possession. If the stolen property is found in his hands, it is recoverable by the injured party in a possessory action at law. There is no basis for a constructive trust as to stolen property in the hands of the thief because of his lack of a property interest....
>
> \* \* \* \*
>
> *The thief does acquire title,* however, *to the proceeds from the sale of the stolen goods.* The purchaser from the thief has ownership of the money he pays to the thief and intends to pass to the thief in return for the stolen goods. This property interest in the proceeds of the sale of the stolen goods has been acquired by means of a crime and surely should be recovered from the thief by the use of the constructive trust. Bogert, § 476, at 119–20 (emphasis added).

> *Accord,* Restatement, § 160, cmt. j; § 166, cmt. f.

Consequently, the fact that we are dealing with the proceeds of stolen property does not change the nature of the court's analysis. The estate is the owner of those proceeds and whether they should be subjected to a constructive trust is evaluated by the same principles that would be applied to any other claim to a constructive trust in bankruptcy.

As for the analogy to *Winstandley's* reference to stolen logs, 41 N.E. at 957, it is not apropos. Stolen logs are stolen logs. No matter how you cut or shape them, they continue to be stolen. Yet, they also continue to be the same object that was stolen; they continue to be chattels which are composed of the original (stolen) materials— those materials have simply been disguised. The analogy would be an apt one if we were dealing with the plans, designs, blueprints, drawings, or diskettes containing computer files which were taken from Fibre Form. Then, no matter how they had been folded, spindled or mutilated, they would continue to be chattels and composed of the original (stolen) materials. The analogy might even be appropriate if we were dealing with copies of those things. Then we would be confronted with a chattel which could be said to be composed of the original materials, for, since we are dealing with trade secrets, it is not the physical objects which were taken that have value; instead, the value lies in the information those objects contained and a copy of secret plans is just as important as the original plans themselves. But, we are not dealing with a chattel. The property in question is an account receivable—an intangible—which, if it is composed of anything at all, is composed only of ICI's obligation to pay.

What Fibre Form's argument fails to fully appreciate is that we are confronted with a situation in which the thief can possess both the stolen property and its proceeds simultaneously. A more appropriate analogy might be if Nova had stolen the Hope Diamond and, rather than selling it, placed it on exhibition, charging the public admission for the opportunity to view the jewel. In the ensuing bankruptcy, the Smithsonian would clear-

ly be entitled to recover the gem and neither the debtor nor the trustee would have any basis to claim it for the estate. The proceeds generated by charging the public admission to the exhibitions of the diamond would, however, be a different matter. While the Smithsonian might well contend that those proceeds were subjected to a constructive trust, the estate would be their owner and the museum's claim would be evaluated by the same principles that apply to any other claim to a constructive trust in bankruptcy.

Fibre Form finds itself in much the same position as the Smithsonian in our Hope Diamond analogy, where the estate possessed both the stolen property and its proceeds. The trustee makes no claim to the stolen property—Fibre Form's trade secrets—and does not suggest that they are property of the estate. All agree that, to the extent possible, he has returned them to their rightful owner. It is their proceeds—the ICI receivable—that are in issue and, although Fibre Form claims they are held in a constructive trust, its right to recover them is not automatic but is, instead, measured by the same standards applied to any other assertion to a constructive trust in bankruptcy.

■ We must determine whether Fibre Form is entitled to a constructive trust based, not only upon Debtor's misconduct, but also upon whether its imposition will prevent unjust enrichment and the impact of doing so upon Debtor's other creditors. "A constructive trust ... may be imposed only in limited circumstances to prevent unjust enrichment." *Matter of Teranis,* 128 F.3d 469, 473 (7th Cir.1997). *See also, Hicks v. State,* 635 N.E.2d 1151, 1154 (Ind.App. 1994)("to prevent the wrongdoer from reaping a benefit" because "he would be unjustly enriched"); *Hunter v. Hunter,* 152 Ind.App. 365, 283 N.E.2d 775, 779 (Ind.Ct.App. 1972)("to uphold justice and avoid unjust enrichment."). Here, the debtor will not be unjustly enriched by its wrongdoing. The assets of the estate are not sufficient to fully pay the claims of creditors. When the case has been concluded, everything of value will have been disposed of and nothing will be left to be returned to the debtor that might somehow allow it to profit from its misconduct. The only ones who would be deprived of anything will be debtor's other creditors, because their less than complete recovery would be reduced even further by setting aside a significant asset of the estate exclusively for Fibre Form's benefit. This is not a situation in which the court should impose a constructive trust. *See Iowa Railroad,* 840 F.2d at 545; *Omegas,* 16 F.3d 1443; *North American Coin,* 767 F.2d at 1575; *In re Jeter,* 171 B.R. at 1020–24, *aff'd,* 73 F.3d 205; *Foos,* 183 B.R. 149. *See also In re McCafferty,* 96 F.3d 192, 197 (6th Cir.1996)(constructive trust may be imposed when doing so will not diminish the distribution to other creditors). While Fibre Form has a claim against the estate as a result of Debtor's misappropriation of its trade secrets, what it receives on account of that claim will be determined by the statutory priorities established for the distribution of the bankruptcy estate, not by excluding property from the estate under the theory that it is held in a constructive trust.[4]

Even if Fibre Form's claim is measured by Indiana law, this state's characterization of constructive trusts does not support the argument that they are regarded as an interest in property. The Indiana decisions which try to describe just what a constructive trust is do so in a way that emphasizes their remedial, equitable nature. They are "a fiction of equity". *Duran v. Komyatte,* 490 N.E.2d 388, 392 (Ind.Ct.App.1986). Following on this same theme, the Indiana Supreme Court has described them as "a fiction of equity devised to the end that the equitable remedies available against a conventional fiduciary may be available ... against one who through fraud or mistake or by any means ex

---

4. In reaching this conclusion, the court realizes that Fibre Form contends the misuse of its proprietary information continued after the date of the petition, thus, to some extent, representing a post-petition claim entitled to a priority in the distribution of the estate. Assuming this to be true does not change the court's conclusion concerning its right to a constructive trust. Any enhancement to which its distribution might be entitled, as a result of any post-petition misconduct, will be a function of the statutory priority given to the payment of post-petition claims, rather than through the imposition of a constructive trust.

maleficio acquires property of another." *Brown v. Brown*, 235 Ind. 563, 135 N.E.2d 614, 616 (Ind.1956)(quoting Bogert, § 471.). *See also Koenig v. Leas*, 240 Ind. 449, 165 N.E.2d 134, 137 (Ind.1960). *See also Shafer v. Lambie*, 667 N.E.2d 226, 229 (Ind.Ct.App. 1996); *Huff v. Biomet*, 654 N.E.2d 830, 837 (Ind.Ct.App.1995); *Givens v. Rose*, 178 Ind. App. 590, 383 N.E.2d 448, 452 (Ind.Ct.App. 1978); *Hunter v. Hunter*, 152 Ind.App. 365, 283 N.E.2d 775, 779 (Ind.Ct.App.1972). They have also been called "a technique utilized by equity to do justice . . . ." *Forth v. Forth*, 409 N.E.2d 641, 644 (Ind.Ct.App. 1980). Most recently—as "a creature of equity", "[a] constructive trust . . . is more in the nature of an equitable remedy than an independent cause of action." *Chosnek v. Rolley*, 688 N.E.2d 202, 211 (Ind.Ct.App. 1997).

■ The only decision applying Indiana law in a way that, arguably, recognizes the right to a constructive trust as an interest in property is *Mervis v. Sams*, 866 F.Supp. 1143, 1147–48 (S.D.Ind.1994). To the extent this is its holding, it appears to have been wrongly decided and the court declines to follow it.[5] The District Court rejected the argument that the wrongdoer's interest in the proceeds of its ill gotten gains was "voidable". *Mervis*, 866 F.Supp. at 1148–49. Yet, this is precisely how the Indiana Supreme Court has characterized a constructive trust.

> A constructive trust arises in cases where the transaction involved is tainted by fraud, actual or constructive. In such cases, in order *to prevent the wrongdoer from reaping a benefit, a court of equity will construct a trust such as equity and good conscience requires* . . . .
>
> If fraud is inherent in the transaction which results in the execution of the deed, such fraud renders the whole contract including the deed *voidable*. When fraud is shown in such a case, the court . . . will set aside the contract and deed when such a course will meet the ends of justice. If the ends of justice cannot be attained by setting aside the deed, a court of equity will suffer the title to rest in the fraudulent grantee as a trustee maleficio and such a

trust will be constructed by the court as will subserve the ends of justice and fair dealing . . . . *[T]he trust which is enforced is* . . . *a constructive trust created by the court* to meet the emergency of the situation arising out of the fraud.

> [T]he court will declare and enforce a constructive trust against the wrongdoer if the ends of justice can be attained in that way. *Westphal v. Heckman*, 185 Ind. 88, 113 N.E. 299, 302 (Ind.1916)(emphasis supplied).

Accordingly, this court concludes that, under Indiana law, a constructive trust is an equitable remedy that does not confer any property interest in the "beneficiary" until a court has created it by declaring such relief.

The trustee's motion for summary judgment is granted. The ICI account receivable is not held in a constructive trust for the benefit of Fibre Form and is not excluded from the bankruptcy estate. The remaining issues in this adversary proceeding will be set for a final pre-trial conference by separate order.

---

5. On a more careful reading, however, *Mervis* may articulate nothing more than the traditional rules concerning the tracing of wrongfully acquired property to its proceeds.